## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAMION WILKS                          :
   (A75-575-118)                   :    No. 1:CV-07-2171
     Petitioner,                  :
                                  :
                                  :
       v.                          :    (J. Caldwell)
                                  :
UNITED STATES DEPARTMENT OF           :
HOMELAND SECURITY, et al,             :
      Respondents.                :

## PETITIONER'S MOTION FOR ATTORNEY'S FEES

Petitioner hereby moves for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) & 5 U.S.C. § 504 et seq. As set forth below, Petitioner is the prevailing party within the meaning of the Act because this Court granted his petition for a writ of habeas corpus and ordered that the Government provide him with a hearing before the immigration judge, where it bore the burden of establishing whether his continued detention was warranted. *See Wilks v. U.S. Dep't of Homeland Security*, No. 07-2171, 2008 WL 4820654, at *1 (M.D. Pa. Nov. 3, 2008). Moreover, the position of the Government in opposing Mr. Wilks' petition and continuing his detention without meaningful review before and during the litigation were not substantially justified.

## FACTS AND PROCEDURAL HISTORY

The factual background of Mr. Wilks' habeas petition is set forth in this Court's opinion at 2008 WL 4820654, at *1-2. To summarize briefly, at the time his petition was before this Court, Mr. Wilks has been detained by U.S. Immigration and Customs Enforcement (ICE) for approximately 29 months while challenging the Government's efforts to remove him based on his convictions for firearms possession and aggravated assault, notwithstanding a meritorious claim to cancellation of removal that was recently granted by the Immigration Judge (IJ). Until this Court's grant of habeas relief, Petitioner had been afforded no review of his prolonged detention beyond two perfunctory custody reviews, in which the Government asserted that the mere fact of his past offenses rendered him a danger to the community and required his detention.

On November 27, 2007, Mr. Wilks filed a petition for a writ of habeas corpus before this Court.[1] This Court granted Mr. Wilks' petition on November 3, 2008, holding that where detention is prolonged, the mandatory detention statute, Immigration and Nationality Act (INA), 8 U.S.C § 1226(c), must be construed to require an IJ bond hearing where the

---

[1] This Court initially dismissed Mr. Wilks' petition on June 4, 2008. Petitioner appealed, and the Third Circuit remanded on September 25, 2008 so that this Court could consider Petitioner's detention under 8 U.S.C. § 1226.

2

Government bears the burden of justifying continued imprisonment. *Wilks*, 2008 WL 4820654, at *2.

Pursuant to this Court's order, the IJ held a bond hearing on November 13, 2008 and, finding that Petitioner's detention was not justified on the basis of either flight risk or danger, set bond in the amount of $5,000.00. *See* IJ Bond Decision, Nov. 13, 2008 (attached as Ex. A). The next day, however, the Government applied for an emergency stay of the bond order pending its appeal, which the Board of Immigration Appeals (BIA) granted on November 17, 2008. BIA Stay of Execution, Nov. 17, 2008 (attached as Ex. B). On November 19, 2008, Petitioner filed a Emergency Motion to Reconsider the Stay, which is still pending before the Board. Consequently, Petitioner remains in detention to date.

On December 18, 2008, the IJ held a merits hearing on Petitioner's application for cancellation of removal. On January 29, 2009, the IJ granted relief in light of the equities in Petitioner's case, including his strong family ties, work history, and military service. *See* IJ Decision Granting Cancellation, Jan. 29, 2009, at 3-4 (attached as Ex. C). The time for the Government's appeal elapses on March 2, 2009. *See* 8 C.F.R. § 1003.38(b) (providing 30 days to file notice of appeal of IJ decision with the Board).

## ARGUMENT

### A. Petitioner is Entitled to Fees Under the EAJA

#### 1. EAJA is Applicable to Mr. Wilks' Successful Habeas Petition

EAJA applies to habeas petitioners in the immigration context. *See In re Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (holding that the text and structure of EAJA dictate that it applies to immigration habeas petitions); *see also* 28 U.S.C. § 2412(d)(1)(A) (EAJA applies to "any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action").

#### 2. Petitioner is the Prevailing Party

To qualify for an EAJA award, petitioner must show that he is a "prevailing party." *See* 28 U.S.C. § 2412(a)(1). A prevailing party is the one who "has been awarded some relief by a court." *Buckhannon Bd. and Care Home, Inc. v. West Va. Dep't of Health and Human Resources*, 532 U.S. 598, 603 (2002).

There is no question that Mr. Wilks is the prevailing party here. He sought a writ of habeas corpus challenging his prolonged detention in the absence of a constitutionally adequate hearing. On November 3, 2008, this Court ordered that the Government provide him with a bond hearing before

the IJ where it bore the burden of justifying his continued detention. This grant of relief satisfies the EAJA prevailing party requirement. *Id*. at 602.

### 3. Petitioner Meets the Net Worth Requirements of the EAJA

EAJA requires that a litigant's net worth not exceed $2,000,000 at the time the action was filed. 28 U.S.C. § 2412(d)(2)(B). Petitioner meets that requirement. *See* Declaration of Damion Wilks ¶ 3 (attached as Ex. D).

### 4. The Government's Position Was Not Substantially Justified

The Government's position in this action was not substantially justified within the meaning of the EAJA. As the Third Circuit has explained, the Government's position is "substantially justified if it has a reasonable basis in both law and fact." *Hanover Potato Products, Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993). "The burden of demonstrating substantial justification for its position rests squarely on [the Government]." *Id*. In order to establish substantial justification, the Government must establish "(1) a reasonable basis in truth for the facts alleged; (2) a [reasonable basis] in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Id*. Significantly, the EAJA "favors treating cases like an inclusive whole, rather than as atomized line items." *Commissioner, INS v. Jean*, 496 U.S. 154, 162

(1990). Thus, "substantial justification on the part of the Government in opposing one of the plaintiff's claims does not render its position substantially justified as to all of its other claims." *Hanover Potato Products, Inc.*, 989 F.2d at 131.

Moreover, the Government's "position" under the EAJA includes "not only the position taken in the litigation but the agency position that made the litigation necessary in the first place. Thus, unless the Government's pre-litigation and litigation positions have a reasonable basis in both law and fact, the government's position is not substantially justified." *Id.*; 28 U.S.C. § 2412(d)(2)(D) (defining "position of the United States" as "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based"). Thus, the Government here must show both its litigation position and ICE's continuing decision to detain Mr. Wilks were reasonable in light of the factual record and the law. Here, the Government cannot meet either burden: its litigation position was not substantially justified, and ICE's position before and during the litigation with respect to Mr. Wilks' detention was not substantially justified either.

### i. The Government's Litigation Position Was Not Substantially Justified

The Government's litigation position was not substantially justified for several reasons. First, and most importantly, the Government's assertion that its perfunctory and rubberstamp custody reviews satisfied due process contradicted Supreme Court and Third Circuit precedent. The Supreme Court held in *Zadvydas v. Davis*, 533 U.S. 678 (2001), that prolonged detention must be accompanied by a "sufficiently strong special justification" and "strong procedural protections." *Id*. at 690-91. Moreover, the Third Circuit held in *Ngo v. INS*, 192 F.3d 390 (3d Cir. 1999)—a case which the Government neither cited nor even attempted to distinguish—that such reviews must be meaningful in nature. *See id*. at 398 ("When detention is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable . . . . [W]e emphasize that grudging and perfunctory review is not enough to satisfy the due process right to liberty"). Yet Mr. Wilks' custody reviews nowhere approached the procedural protections that due process requires. As this Court explained, "[p]eriodic reviews of the alien's detention can satisfy due process concerns . . . but any such reviews cannot be 'perfunctory' . . . . It is true that [Mr. Wilks] received two reviews of his detention during this time, but we do not believe they met due process concerns, as the last review Petitioner received was not meaningful, for the

reasons he has given." *Wilks*, 2008 WL 4820654, at *2-3, (quoting *Ngo*, 192 F.3d at 398).

In particular, *Ngo* made clear that due process requires "an evaluation of the individual's *current* threat to the community" and forbids a presumption of dangerousness based on the non-citizens' past record alone. *Id*. at 398-99 (emphasis added). Yet in the face of binding circuit precedent, the Government impermissibly defended the agency's decision to continue Mr. Wilks' detention as a danger based solely on his criminal history.

Moreover, the Government's position—that 8 U.S.C. § 1226(c) required Mr. Wilks' prolonged *mandatory* detention in the absence of *any* review, much less constitutionally adequate review—was also not substantially justified. Indeed, the Government did not even attempt to address Petitioner's argument that, under the canon of constitutional avoidance, the INA could not authorize Petitioner's prolonged mandatory detention without raising serious constitutional concerns.

At the time Mr. Wilks' petition was pending before this Court, he had already been detained for approximately 29 months. Yet, in *Demore v. Kim*, 538 U.S. 510, 513 (2003), the Supreme Court upheld mandatory, pre-removal order detention under 8 U.S.C. § 1226(c) only for the "*brief* period necessary for [completing] removal proceedings," 538 U.S. at 513

(emphasis added), relying heavily on the Government's representations that such detention lasts "roughly a month and a half in the vast majority of cases in which it is invoked, and about four months in the minority of cases in which the alien chooses to appeal." *Id*. at 530. *See also Madrane v. Hogan*, 520 F. Supp. 2d 654, 664 (M.D. Pa. 2007) (noting that "[t]he emphasis in *Demore* on the anticipated limited duration of the detention period is unmistakable, and the Court explicitly anchored its holding by noting a brief period.") (internal citations omitted). Mr. Wilks' 29-month long detention— more than five times the average five-month period recognized by the Supreme Court in *Demore*, 538 U.S. at 530—was thus patently unreasonable.

Moreover, the circuit courts considering the issue since *Demore* had acknowledged the serious constitutional concerns raised by prolonged, pre-final order detention. *See Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005); *Ly v. Hansen*, 351 F.3d 263, 271-72 (6th Cir. 2003); *Welch v. Ashcroft*, 293 F.3d 213, 224 (4th Cir. 2002). Other judges within the Middle District of Pennsylvania had recently held the same. *See, e.g., Madrane*, 520 F. Supp. at 666 (expressing "concern over what appears to be an extraordinarily lengthy deprivation of liberty" where detainee had been in custody for over three years); *Nunez-Pimentel v. U.S. Dep't of Homeland*

*Security*, No. 07-1915, 2008 WL 2593806 (M.D. Pa. June 27, 2008) (same).

Yet, despite these widely recognized constitutional concerns, the

Government maintained that Mr. Wilks was subject to prolonged mandatory

detention until such time as his removal proceedings were complete. This

position was not substantially justified.

### ii. The Agency's Position Before and During the Litigation Position Was Not Substantially Justified

In addition, ICE's position with respect to Mr. Wilks' detention before

and during the litigation was not substantially justified. First, the agency's

failure in its May 2007 and June 2008 custody reviews to meet the

requirements of *Ngo* was not substantially justified as a matter of law. *See*

*Sanusi v. Chertoff*, No. 07-16, 2008 WL 1995141, at *3-4 (D.N.J. May 6,

2008) (Government's failure to conduct an individualized custody review

was not substantially justified in light of *Ngo*). As set forth above, the

Government based its finding of dangerousness entirely on Mr. Wilks' past

criminal record, in direct contravention of *Ngo*. *See supra*.

Furthermore, the agency's custody reviews violated governing

regulations by ignoring a number of mandatory factors for review, *see* 8

C.F.R. § 241.4(h)(3) (providing that review "will include" enumerated

factors), including evidence of Mr. Wilks' rehabilitation, *see* 8 C.F.R. §

241.4(f)(4); the relatively minor "nature and severity of [his] convictions, sentences imposed, and time actually served," *see* 8 C.F.R. § 241.4(f)(2), and his strong family ties, ability to adjust to life in the community, and other factors favoring release. *See* 8 C.F.R. §§ 241.4(f)(5), (f)(8)(i). Moreover, Mr. Wilks never even received notice of his first custody review, again in violation of the regulations, 8 C.F.R. § 241.4(h)(2), and was thus unable to submit any information in support of his release. Clearly, the agency's failure to meet these express regulatory requirements is not substantially justified.

Relatedly, the agency's position before and during the litigation was not substantially justified from a factual standpoint either. As set forth above, the agency made no meaningful determination of whether Mr. Wilks needed to be detained as a danger. Moreover, the agency entirely ignored the many facts that called for his release, such as the relatively minor nature of his crime and sentence (i.e. one month in prison and eight months of house arrest); release on bail and compliance with the terms of his release; his participation in anger management, parenting, and Alcoholics Anonymous/Narcotics Anonymous classes while in detention; his access to a home with his U.S. citizen mother; his potential gainful employment as a medical assistant; his desire to take care of his three year old, U.S. citizen

daughter; and his military service. *See* Pet. Reply, Declaration of Damion Wilks, Ex. D, ¶¶ 7-12. The agency's decision to continue Mr. Wilks' detention in the face of this evidence was not factually justified. *See Sanusi*, 2008 WL 1995141 at *4 ("Because the Government applied the law without regard for the full and complete factual picture in this case, therefore, the Court finds that the Government's position was not substantially justified"); *cf. FJ Wollmer Co Inc., v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996) ("we have held that where an agency's decision was overturned as unsupported by substantial evidence, the agency's position was not substantially justified because it lacked a reasonable factual basis") (quotations and internal citations omitted).

Finally, ICE's refused to even consider whether other conditions of release, such as electronic monitoring, would be sufficient to satisfy the Government's interests without requiring such a significant deprivation of Mr. Wilks' liberty. Notably, Mr. Wilks had himself offered to submit to electronic monitoring. ICE's refusal in the face of this alternative was not substantially justified. *See Sanusi*, 2008 WL 1995141, at *3 ("the Court is troubled by the Government's failure to consider a release plan at the onset of this case"); *Ngo,* 192 F.3d at 398 (criticizing Government for failing to

make any effort to determine if the petitioner's conduct "could be discouraged by requiring appropriate surety").

### 5. No Special Factors Make an Award of Fees Unjust

The EAJA permits a court to deny fees where "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Government bears the burden of proving that such circumstances exist. *Brinker v. Guiffrida*, 798 F.2d 661, 668 (3d Cir. 1986). This provision protects "the government's good faith advancement of novel but credible extensions and interpretations of the law, and to protect the court's discretion to rely on equitable considerations" in denying a fee award. *Id.* at 667 (quotations and citations omitted). No such circumstances exist here.

### B. The Fees Sought Are Reasonable and Consistent with the EAJA

Once entitlement to EAJA fees is determined, the "court's task of determining what fee is reasonable is essentially the same as that described in *Hensley* [*v. Eckerhart*, 461 U.S. 424 (1983)]." *Jean*, 496 U.S. at 161. *Hensley* instructs in turn that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"—or, the lodestar. 461 U.S. at 433. Petitioner's lodestar calculations are included in the charts attached to the Declarations of Judy Rabinovitz,

Amrit Singh, Valerie Burch, Michael Tan (attached as Ex.s E-H). Petitioner seeks fees in the amount of $ 43,147.29.

### 1. The Number of Hours Claimed is Reasonable

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . ." *Hensley*, 461 U.S. at 435. Here, Petitioner's counsel achieved excellent results for their client, and they should be compensated for all the hours claimed here.

The number of hours for which compensation is sought is reasonable. As set forth in the accompanying declarations, the attorneys carefully documented the work they performed by maintaining daily contemporaneous time records, detailing the time spent by date and activity. *See* Ex. E, Declaration of Judy Rabinovitz ["Rabinovitz Decl."] ¶ 2; Ex. F, Declaration of Amrit Singh ["Singh Decl."] ¶ 2; Ex. G, Declaration of Valerie Burch ["Burch Decl."] ¶ 2; Ex. H, Declaration of Michael Tan ¶ 2. In reviewing the time records for all attorneys, Ms. Rabinovitz has exercised billing judgment by eliminating unnecessary or duplicative hours. She has also exercised further billing judgment by imposing a general five percent reduction on all fees calculated, and by excluding all hours spent by our paralegal and law student interns even though that time is compensable. Ex.

E, Rabinovitz Decl. ¶ 3; *see also Missouri v. Jenkins*, 491 U.S. 274, 285

(1989) ("the fee must take into account the work not only of attorneys, but

also of secretaries, messengers, librarians, janitors, and others whose labor

contributes to the work product for which an attorney bills her client").

### 2.  The Rate Claimed is Reasonable

### i.  Attorneys Rabinovitz, Singh, and Burch are Entitled to Market Rates

Although the EAJA generally authorizes fees not to exceed $125 per

hour adjusted for inflation, a Court may award fees at a higher rater where "a

special factor, such as the limited availability of qualified attorneys for the

proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).

Applying this provision, the Supreme Court has held that the statutory rate

may properly be increased in a case where there is a limited availability of

"attorneys having some distinctive knowledge or specialized skill needful

for the litigation in question . . . . Examples . . . would be an identifiable

practice specialty such as patent law, or knowledge of foreign law or

language."  *Pierce v. Underwood*, 487 U.S. 552, 572 (1988).

Here, Petitioner is entitled to fees in excess of the EAJA statutory rate

for the work of the three specialists in immigrants' rights litigation who

worked on this case: Judy Rabinovitz, Amrit Singh, and Valerie Burch.  All

three of these attorneys possess specialized expertise in constitutional immigration law, and this case required that expertise.

Courts have long recognized that immigration law requires specialized knowledge and skill. *See, e.g.*, *Castro O'Ryan v. INS*, 847 F.2d 1307, 1312 (9th Cir. 1987) ("With only a small degree of hyperbole, the immigration laws have been termed second only to the Internal Revenue Code in complexity . . . . A lawyer is often the only person who could thread the labyrinth."). In recognition of the special expertise that immigration law requires, many courts have recognized that a specialized knowledge of immigration law can warrant enhanced attorney rates. *See, e.g., Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004) (finding that immigration expertise, "such as knowledge of . . . particular, esoteric nooks and crannies of immigration law," warranted a special factor rate adjustment); *Jean v. Nelson*, 863 F.2d 759, 774 (11th Cir. 1988) (recognizing that a "special factor" rate adjustment might be appropriate for attorneys who have a special expertise in immigration law).

The instant case required not only counsel with expertise in immigration law, but in the particular area within immigration law concerning the rights of detained immigrants. The three attorneys who seek market rates in this case possess not only immigration expertise, but

expertise in that specific area of immigration law. *See generally* Declaration of Joseph Hohenstein ["Hohenstein Decl."] (attached as Ex. I).

Ms. Rabinovitz, Deputy Director of the ACLU Immigrants' Rights Project (IRP), is the leading attorney in the nation litigating cases involving the rights of detained immigrants. She has litigated numerous cases involving the prolonged detention of immigrants throughout the federal judiciary. She was lead counsel for the petitioner in, *inter alia*, *Demore v. Kim*, 538 U.S. 510 (2003) (upholding mandatory detention of concededly removable aggravated felons for the "brief" period necessary to complete removal proceedings); *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003) (construing immigration statutes to bar indefinite detention of excludable aliens in light of serious constitutional concerns); *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005) (holding that mandatory detention statute did not authorize prolonged detention without bond hearing); and *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) (construing pre-final-order detention statute as authorizing detention only for period reasonably necessary complete removal proceedings, and finding one and a half years of detention especially unreasonable where no chance of actual removal existed). She has worked exclusively in the area of immigrants' rights for twenty years. *See* Ex. E, Rabinovitz Decl. ¶ 1, 5.

Ms. Singh, Staff Attorney at the ACLU IRP, also possesses specialized expertise in cases involving the rights of detained immigrants. Ms. Singh has advocated on behalf of non-citizens subject to prolonged and indefinite detention for four years. She has served as attorney of record on *Joseph v. Avila*, No. 07-02392 (D.N.J. 2007), a habeas action challenging the three-year-long mandatory detention of a Trinidadian national and Gulf War veteran, and *Samadov v. Hogan*, No. 07-00093 (M.D. Pa 2007), a habeas action challenging counsel on litigation challenging the three-year-long post-final order detention of an Uzbeki national. Ms. Singh has also, with Ms. Rabinovitz, served as amicus counsel in *Clark v. Martinez*, 543 U.S. 371 (2005) (invalidating the indefinite, post-final order detention of inadmissible non-citizens). *See* Ex. F, Singh Decl. ¶ 3.

Ms. Burch, Staff Attorney for the ACLU of Pennsylvania (ACLU-PA), also has special expertise in cases involving the rights of detained immigrants. For four years, Ms. Burch has advocated on behalf of non-citizens subject to prolonged detention—as an immigration lawyer and later as a civil litigator. During nearly three years of practice as an immigration lawyer, Ms. Burch represented only detained non-citizens—an estimated thirty-five in all—necessitating over 100 immigration court appearances. In particular, she has served as counsel on *Dalegrand v. Donate et al.*, No. 08-

00951 (M.D. Pa. 2008), a habeas action challenging the two-and-a-half-year-long detention of a Haitian national with medical conditions, and is currently counsel on *Kyeame v. Buchheit*, No. 07-01239 (M.D. Pa 2007), a civil rights action on behalf of a Ghanian-born, Canadian citizen subjected to illegal arrest and detention following a traffic stop. *See* Ex. G, Burch Decl. ¶ 4.

There can be no serious dispute that the specialized skills of these attorneys were necessary for this litigation. A review of the issues involved in Petitioner's case also shows the necessity of specialized expertise. The parties' briefing in this case required extensive treatment of the case law involving the detention of immigrants, a detailed review of the immigration detention statutes, and substantial familiarity with the due process jurisprudence governing civil detention regimes. *See* Ex. I, Hohenstein Decl. ¶ 4. In sum, Mr. Wilks' case was unusually complex, and specialized skills were necessary for the litigation.

Once the party seeking fees establishes that his attorneys possess specialized skills and knowledge, and that those skills and knowledge were needed from for the litigation, the attorneys are to be compensated at prevailing market rates. *Pierce*, 487 U.S. at 571-72; 28 U.S.C. §2412(d)(2)(A). Moreover, though Ms. Rabinvovitz and Ms. Singh are entitled to the prevailing market rate for comparable attorneys in New York

City, in an abundance of caution, they only seek fees at the significantly lower rate at for attorneys in Pennsylvania. *See* Ex. E, Rabinvovitz Decl. ¶ 6; Ex. F, Singh Decl. ¶ 4. As the Declaration of Joseph Hohenstein makes clear, the fees sought for Ms. Rabinovitz, Ms. Singh, and Ms. Burch are at the prevailing market rate that attorneys with their level of experience charge at law firms the Philadelphia area. *See* Ex. I, Hohenstein Decl. ¶¶ 6-7.

ii.    **The Other Attorneys and Paralegals Are Entitled to an Inflation-Adjusted EAJA Rate**

Michael Tan, the other attorney who worked on the case, seeks fees based on the EAJA rate subject to an inflation adjustment. Petitioner is entitled to an inflation adjustment, as courts regularly take inflation into account and award fees at a rate above $125 per hour. *See Dewalt v. Sullivan*, 963 F.2d 27, 27-30 (3d Cir. 1992). In order to determine the inflation-adjusted hourly rate applied for a particular year, the attorney divides that year's consumer price index for urban consumers (CPI-U) by the CPI-U for March 1996 (the date of the amendments to EAJA) and then multiple that figure by $125. *See Walton v. Massanari*, 177 F. Supp. 2d 359, 362 (E.D. Pa. 2001). Thus, for 2008, the hourly rate to which Petitioner's attorneys are entitled is determined by dividing the CPI-U for March 2008, which is 213.528, by the CPI-U for March 1996, which is 155.7. The

resulting number, 1.37, is multiplied by $125 for an hourly rate of $171.25.[2]
The invoice attached to the Declaration of Michael Tan sets forth the hours
for which compensation is sought and the hourly rate pursuant to the above
formula.[3]

## CONCLUSION

For the reasons set forth above, Petitioner hereby respectfully requests
that the Court grant an award of attorney's fees in the amount of $
43,147.29.


Respectfully Submitted,


_____/s/ Judy Rabinovitz
Judy Rabinovitz
Amrit Singh
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS

_____

[2] The CPI-U can be found at the U.S. Department of Labor, Bureau of Labor
Statistics website at ftp://ftp.bls.gov/pub/special.requests/cpi/cpiai.txt.

[3] Petitioner seeks compensation only for time spent through the entry of
judgment and some of the time spent on the fee petition.  If he must litigate
further to obtain fees or enforce the judgment, he will seek fees for that work
after the litigation has concluded.  *See Commissioner of INS v. Jean*, 496
U.S. 154 (1990) (holding that if a prevailing party is entitled to fees under
the EAJA, it is also entitled to fees for time spent on a fee petition without
having to demonstrate that the Government's position in opposing the fee
petition was not "substantially justified.").

PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2618
Fax: (212) 549-2654

Valerie Burch
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
PENNSYLVANIA
105 North Front Street, Suite 225
Harrisburg, PA 17101
Tel: (717) 236-6827

Attorneys for Petitioner

DATED: February 13, 2008

## **CERTIFICATE OF COMPLIANCE WITH LR 7.20**

On February 10, 2009, the undersigned counsel for Petitioner spoke with Respondents' Counsel, Theodore W. Atkinson, by telephone, and Mr. Atkinson stated that the Government does not concur in the instant motion for fees.

 /s/ Amrit Singh____
Amrit Singh

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 13, 2009, I filed the foregoing Motion for Attorney's Fees electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Theodore Atkinson
Gjon Juncaj
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
450 5th Street, NW
Washington, D.C. 20530

Stephen R. Cerutti, II
Dennis Pfannenschmidt
United States Attorney's Office
228 Walnut Street
Suite 220
Harrisburg, PA 17101

I also sent two copies by United States Postal Service First Class Mail to:

Nathanael J. Byerly
United States Attorney's Office
228 Walnut Street
Suite 220
Harrisburg, PA 17101

   /s/  Judy Rabinovitz
JUDY RABINOVITZ