# EXHIBIT A

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
YORK, PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF:<br>WILKS, Damion<br><br>　　　　Respondent | ) IN BOND PROCEEDINGS<br>) 　File # A 076-575-118<br>)<br>)<br>) |

**ON BEHALF OF RESPONDENT:**　　　　　**ON BEHALF OF THE DHS**
Laurence Smith, Esq.　　　　　　　　　　Alice Song
　　　　　　　　　　　　　　　　　　　　Assistant Chief Counsel

### Decision and Order

On November 13, 2008, this court held a bond redetermination hearing in this matter pursuant to a directive from the U.S. District Court for the Middle District of Pennsylvania, a copy of which is appended to this record. At the conclusion of the hearing, a custody bond in the amount of $5,000. was issued.

Respondent was initially admitted to the United States in 1993 as a B-2 visitor at the age of 11; he adjusted status to lawful permanent resident in 1997. A Notice to Appear, Form I-862, was issued against him on or about May 2006, based on his criminal record. On September 29, 2008, this court denied respondent's petition for a custody hearing given that he was subject to mandatory custody per INA § 236(c); a previous order to the same effect was issued on May 30, 2006.

The following facts have been taken into consideration in this case:

- respondent is statutorily eligible to seek Cancellation of Removal under INA § 240A(a);
- he has close family ties to the United States, including a minor daughter, his mother and brother, U.S. citizens all, and a great many distant relatives.
- he is engaged to a U.S. citizen;
- he was discharged from the U.S. Navy with a General Discharge under Honorable Conditions;
- he has a stable employment history with a pending job offer from a prior employer.

The negative factors of record include his arrest record, including a juvenile arrest record dating from 1997 for theft-related offenses. His adult record picks up from there with arrests in 2001 for marijuana possession in South Carolina; in February 2004 in Philadelphia for carrying a firearm without a license; in May 2004 for possession of a controlled substance and driving under the influence; in March 2005 for the same offense for which he received probation, as well as another marijuana conviction in Pennsylvania; in January 2006 he was found guilty of violating his

1

probation and sentenced to 23 months' imprisonment.

He was arrested in April 2005 in Philadelphia for aggravated assault, a firearms offense, and fleeing a police officer. He was found guilty of aggravated assault and sentenced to one year of intermittent house arrest, which sentence was subsequently reduced to 364 days, effectively removing the conviction from the realm of aggravated felony "crime of violence." In this regard, respondent admits that he was driving with a license which was suspended in 2001 and successfully eluded police officers in a high speed chase. After his girlfriend and mother were contacted by the police, he retained an attorney and turned himself in to the police. His aggravated assault charge relates to his high-speed driving to elude the police.

After applying the factors as set forth by the Board in Matter of Guerra, 24 I&N Dec. 37 (BIA 2006), it was determined that a custody bond in the amount of $5,000. was minimally appropriate in this case. While government counsel had the arresting police officer standing by to testify telephonically, the court, as well as respondent, accepted government counsel's offer of proof as to the anticipated testimony of her witness. In the end, danger to the community loomed larger than flight risk. However, the court ceded to the state in this regard. That is, the trial judge, who was in the best position to adjudge the appropriate sentence for respondent's last offense, sentenced respondent to house arrest in lieu of jail time, which permitted respondent to maintain employment. This factor weighed heavily in this matter.

Walter A. Durling
Immigration Judge

November 18, 2008

# EXHIBIT B

NOV-17-2008  13:20       DOJ/EOIR/BIA                    703 605 5236      P.002

**U.S. Department of Justice**                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:  A076 575 118 - York, PA              Date: **November 17, 2008**

In re:  DAMION ANTHONY DERRICK <u>WILKS</u> a.k.a Damion Rivers

IN BOND  PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:     Pro se[1]

ON BEHALF OF DHS:           Alice K. Song
                            Assistant Chief Counsel

APPLICATION:  Stay of Execution

    The Department of Homeland Security (DHS) has applied for an emergency stay of the decision

of the Immigration Judge's bond order of September 4, 2008 ordering the respondent released from

custody upon posting a bond of $5,000.  After consideration of all information, the Board has

considered the request and has concluded that the stay of the bond order will be granted.


    ORDER: The request for stay of execution is granted.


                        _____
                            FOR THE BOARD


---

[1]  The Department of Homeland Security (DHS) has filed an appeal of a bond. It is noted in DHS's
appeal that the respondent's counsel is Laurence L. Smith. Attorney Smith may have represented the
respondent in previous proceedings before the Immigration Judge, but a Form EOIR-27 (Notice of
Entry of Appearance as Attorney or Representative before the Board of Immigration Appeals) has
not been filed by counsel on behalf of the respondent. As a courtesy, a copy of this decision is being
forwarded to Attorney Smith: Laurence L. Smith, 2 South Orange Street, Media, PA 19063.

# EXHIBIT C

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
YORK, PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF:<br>WILKS, Damion Anthony<br><br>        Respondent | ) IN REMOVAL PROCEEDINGS<br>)   File # A 076-575-118<br>)<br>)<br>) |

**ON BEHALF OF RESPONDENT:**
Laurence Smith, Esq.

**ON BEHALF OF THE DHS**
Brian McDonell, Esq.

**APPLICATION**: Cancellation of Removal under INA § 240A(a)

### DECISION AND ORDER

#### Background

    This respondent is a 27-year-old single male alien, a native and citizen of Jamaica, who adjusted status to a lawful permanent resident on or about September 1997 after having been admitted as a non-immigrant visitor on or about April 1993. He was placed into removal proceedings on or about May 8, 2006, with service upon him of a Notice to Appear, Form I-862. After this court ordered his removal to Jamaica on June 27, 2006, which order was upheld by the Board on October 2, 2006, respondent successfully obtained a reduction in his aggravated assault conviction to one day less than one year. In an order dated September 3, 2008, the Board remanded for further proceedings. Respondent last appeared in court on December 18, 2008, to proceed with his cancellation application.

#### Testimony

    Respondent testified that he adjusted status in the United States in 1997 but had resided here since 1993 when he was 11 years old. Upon completion of high school he enlisted in the U.S. Navy in July 2000 and was discharged from active duty in June 2002 with a General Discharge under Honorable Conditions. Respondent explained that he had certain disagreements with his immediate enlisted superior which ultimately led to his administrative discharge.

    Upon discharge, respondent related, he completed a Medical Assistant course of instruction at a technical college and was employed in 2002 at a medical center in Bensalem, PA., where he has a standing offer of re-employment. Respondent testified that he has a 3-year-old daughter with

1

whom he lived as well as the child's mother and greatly desires to return to them. He further informed that he needs to return to employment to assist his mother who suffers from cystic fibrosis.

Respondent provided testimony concerning his criminal record in the United States which started while he was on Navy active duty.[1] According to respondent, he was convicted in 2001 in South Carolina for misdemeanor drug possession off base and received a fine. He was next convicted in March 2005 for possession of an unlicensed firearm and was sentenced to 1-year probation. Respondent admitted having no good reason to possess the handgun but that a friend had given it to him earlier the same day of his arrest. He was again convicted of misdemeanor marijuana possession in March 2005 and received a fine.

His next conviction occurred in April 2005 when he was convicted in Pennsylvania for aggravated assault and for which he ultimately received a reduced term to 364 days of house arrest. He explained that he eluded a police officer in the car owned by his fiance and during the chase he attempted to further hide his identity by tossing his wallet out of the car. He turned himself in to the police a day later after the police called his fiancé. When asked why he would do such a thing, respondent admitted that he was driving on a suspended license and did not want to be caught.

On cross-examination, respondent admitted to using marijuana recreationally since high school. He admitted to driving erratically during his attempt to elude the police, and did not dispute the police officer's testimony describing the chase although he contends that he does not recall seeing an emergency vehicle at the time. He expressed regret for his misconduct.

Respondent's mother testified, as well as that of the police officer, Sgt. William Frysinger. Their respective testimonies are set forth clearly on the record and need not be repeated. Both witnesses were found credible. However, the officer did add that he observed a handgun being tossed from respondent's car during the chase, and a few days later a pedestrian found the loaded handgun and turned it in.[2]

## Cancellation Standards

The court has applied the standards of review as set forth in the Board's two published decisions pertaining to cancellation of removal for permanent residents. Matter of Sotelo, 23 I&N Dec. 201 (BIA 2001), and Matter of C-V-T-, 22 I&N Dec. 7 (BIA 1989). That is, the same standards which had been formulated to assess a claim under former section 212(c) apply with equal force to applications for cancellation of removal pursuant to section 240A(a) INA, with the exception that an alien need not establish "unusual or outstanding equities" to offset his criminal convictions.

---

[1] He also apparently has an earlier juvenile adjudication at age 14 for receiving stolen property for which he was punished with 20 hours of community service.

[2] While respondent was also charged with possession of an instrument of a crime in this regard, that charge was *nolle prossed.*

### Discussion

This case poses somewhat of a dilemma to the court. On the one hand, we have an individual who is a high school graduate, who served under honorable conditions on active duty in the U.S. Navy, and who attained higher formal education both in the Navy where he was trained as a Navy Corpsman (medic), but also as a Medical Assistant after discharging from the Navy. He is by all accounts held in esteem by his co-workers and he has an outstanding employment offer from the same medical center where he worked prior to his last conviction.[3]

The dilemma arises due to respondent's repeated exposure to the criminal justice system where he has two marijuana convictions, one juvenile adjudication, one conviction for illegal firearms possession, and finally for aggravated assault. This conviction, obviously, is his most serious offense. By all creditable accounts, respondent successfully eluded the police while reaching speeds of close to 100 mph, and in doing so, created not only the obvious hazard to innocent passers-by as one would well expect, but he also sped past an emergency vehicle which was stopped and rendering aid, and also came close to colliding with the police officer giving chase.

While not convicted of such offense, a loaded semi-automatic handgun was tossed from respondent's car during the chase. Fortunately a responsible adult found the weapon and relinquished it to the police. That weapon could have ended up in the hands of a violent criminal, or in the hands of a child, resulting in tragic consequences. And while this respondent is articulate and appears of more than average intelligence, the only reason he gave for acting in such intemperate manner was that he was driving with a suspended license and did not want to get caught. The court would add that more than likely he also did not want to get caught with an unregistered firearm in his vehicle, whether he owned it or not.

### Decision

After fully considering all of the evidence in this case, both testimonial and documentary, and finding it to be a close case, the court will exercise it's discretion favorably towards this applicant. Respondent has only himself to blame for his current predicament; his unwise choices have led him to the threshold of permanent exile from the United States. While not minimizing respondent's criminal record, the court is persuaded by respondent's mother's plea for leniency towards her son. She testified that he is a very good father to his minor daughter and a good neighbor in his neighborhood. Heaven knows there is a plethora of single parent households in this country, often headed by undereducated females, and often lacking even child support from absent fathers. Whenever possible this court endeavors to keep families together when it is not unreasonable to do so.

Moreover, serving on active duty in the U.S. Armed Forces is not the unusual equity one sees

---

[3] Respondent divulged that he has been held in ICE custody for 31 months as of his last hearing.

in these cases; it is rather unique and warrants the credit it deserves.[4]  He has been gainfully employed, has employment awaiting him, and received house arrest instead of incarceration for his last offense.  However, respondent is put on notice that any future convictions will almost certainly result in his removal to Jamaica.  There will be no further chances extended to him.  The following order will be entered in this matter.

ORDER: Respondent's application for cancellation of removal in accordance with INA § 240A(a) is granted.

Walter A. Durling
Immigration Judge

January 29, 2009

---

[4] This type of discharge, while administrative in nature and reflecting on respondent performing his military duties in less than exemplary fashion, is nonetheless not considered  punitive in nature.

4

```
                         IMMIGRATION COURT
                      3400 CONCORD ROAD, SUITE 2
                           YORK, PA  17402
```

In the Matter of

                         Case No.: A076-575-118

WILKS, DAMION ANTHONY DERRICK

     Respondent             IN REMOVAL PROCEEDINGS

   *Smith Esq*      ORDER OF THE IMMIGRATION JUDGE

This is a summary of the written decision entered on Jan 29, 2009.
This memorandum is solely for the convenience of the parties.  If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[   ]  The respondent was ordered removed from the United States to
     or in the alternative to .
[   ]  Respondent's application for voluntary departure was denied and
     respondent was ordered removed to  or in the
     alternative to .
[   ]  Respondent's application for voluntary departure was granted until
     upon posting a bond in the amount of $ _____
     with an alternate order of removal to .

Respondent's application for:
[   ]  Asylum was ( )granted ( )denied( )withdrawn.
[   ]  Withholding of removal was ( )granted ( )denied ( )withdrawn.
[   ]  A Waiver under Section _____ was ( )granted ( )denied ( )withdrawn.
[ ✓ ]  Cancellation of removal under section 240A(a) was ( ✓ )granted ( )denied
     ( )withdrawn.

Respondent's application for:
[   ]  Cancellation under section 240A(b)(1) was ( ) granted  ( ) denied
     ( ) withdrawn.  If granted, it is ordered that the respondent be issued
     all appropriate documents necessary to give effect to this order.
[   ]  Cancellation under section 240A(b) (2) was ( )granted ( )denied
     ( )withdrawn.  If granted it is ordered that the respondent be issued
     all appropriated documents necessary to give effect to this order.
[   ]  Adjustment of Status under Section _____ was ( )granted ( )denied
     ( )withdrawn.  If granted it is ordered that the respondent be issued
       all appropriated documents necessary to give effect to this order.
[   ]  Respondent's application of ( ) withholding of removal ( ) deferral of
     removal under Article III of the Convention Against Torture was
     ( ) granted ( ) denied ( ) withdrawn.
[   ]  Respondent's status was rescinded under section 246.
[   ]  Respondent is admitted to the United States as a _____ until _____.
[   ]  As a condition of admission, respondent is to post a $ _____ bond.
[   ]  Respondent knowingly filed a frivolous asylum application after proper
     notice.
[   ]  Respondent was advised of the limitation on discretionary relief for
     failure to appear as ordered in the Immigration Judge's oral decision.
[   ]  Proceedings were terminated.
[   ]  Other: _____
     Date:  Jan 29, 2009

                                  _____
                                  WALTER A. DURLING
                                  Immigration Judge

   Appeal: Waived/Reserved   Appeal Due By:

                   *March 2, 2009*
```

# EXHIBIT D

## DECLARATION OF DAMION WILKS

I, Damion Wilks, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the following statements are true and correct to the best of my knowledge, information, and belief:

1. I have been detained by U.S. Immigration and Customs Enforcement since May 8, 2006.  I am currently being held at the York County Prison, 3400 Concord Road, York, PA  17402.

2. Because I am currently in detention, I am not able to earn an income.

3. I do not have funds or other assets worth $2,000,000.


_____                    2/6/09
Damion Wilks                                    Date

# EXHIBIT E

## DECLARATION OF JUDY RABINOVITZ

I, Judy Rabinovitz, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the following statements are true and correct to the best of my knowledge, information, and belief:

1.  I am Deputy Director of the ACLU Immigrants' Rights Project (IRP) and an attorney for the Petitioner in the above-captioned matter.  I am a member of the Bar of the State of New York.  I have been admitted to practice before numerous federal courts, including the United States Supreme Court and Courts of Appeals for the First, Second, Third, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits.  I graduated from New York University Law School in 1985 and began working for the ACLU IRP in 1988.

2.  Over the course of this litigation, I maintained contemporaneous time records of work I performed on this case.  The time records attached hereto were compiled by reviewing these records.

3.  In determining the number of hours of work for which I seek compensation in this matter, I exercised billing judgment to ensure that the amount ultimately claimed was reasonable in several ways. First, I eliminated entries that I thought were duplicative or otherwise not essential to the litigation itself.  Second, I excluded all the hours spent by our paralegal and law student interns on this case.  Third, I

substantially reduced the number of hours I spent on the litigation, out

of an abundance of caution to ensure that we were not billing

excessively.

4. In addition, I compared the entries listed by Ms. Singh, Ms. Burch,

and myself.  Where those entries revealed inconsistencies in the

amount of time expended, I chose the shorter of the times described in

the different entries.

5. I possess significant specialized expertise in the issues raised by this

case.  I am one of the nation's leading civil rights attorneys working in

the area of immigration detention.  I have litigated a number of major

cases involving the prolonged detention of immigrants in the federal

courts, having served as lead counsel in *Demore v. Kim*, 538 U.S. 510

(2003) (upholding mandatory detention of concededly removable

aggravated felons for the "brief" period necessary to complete

removal proceedings); *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th

Cir. 2003) (construing immigration statutes to bar indefinite detention

of excludable aliens in light of serious constitutional concerns);  *Tijani

v. Willis*, 430 F.3d 1241 (9th Cir. 2005) (holding that mandatory

detention statute did not authorize prolonged detention without bond

hearing); and *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) (construing

pre-final-order detention statute as authorizing detention only for period reasonably necessary complete removal proceedings, and finding one and a half years of detention especially unreasonable where no chance of actual removal existed).

6. Based on conversations with my colleagues who have recently researched the issue, I am also familiar with the billing practices and rates of law firms in New York City. The prevailing market rate for an attorney of my experience and expertise is well over $500.00. However, out of an abundance of caution, I am requesting fees at the prevailing market rate for comparable attorneys the Philadelphia area, or $500.00.

_____
Judy Rabinovitz

Feb 13, 2009
Date



**Immigrants' Rights Project**
**American Civil Liberties Union Foundation**
**125 Broad St., 18th Fl.**
**New York, NY 10004**

February 10, 2009

Damion Wilks
York County Prison                                    Staff: [Judy Rabinovitz]
3400 Concord Rd.
York, PA 17402

| Date | Staff | Description | Hours | Rate | Total |
|------|-------|-------------|-------|------|-------|
| | | Previous Balance | | | $0.00 |
| 7/25/2008 | Judy Rabinovitz | Strategy Call w/ Co-Counsel RE: Filing Appeal | 0.67 | $500.00 | $333.33 |
| 7/31/2008 | Judy Rabinovitz | Strategy Call w/ Co-Counsel RE: Filing Appeal | 0.33 | $500.00 | $166.67 |
| 8/15/2008 | Judy Rabinovitz | Review and Edit Motion to Expedite Appeal | 2.00 | $500.00 | $1,000.00 |
| 8/25/2008 | Judy Rabinovitz | Review First Draft of 3d Cir Merits Brief | 2.00 | $500.00 | $1,000.00 |
| 8/27/2008 | Judy Rabinovitz | Review and Edit Reply Brief in Sppt of Motion to Expedite | 3.00 | $500.00 | $1,500.00 |
| 9/3/2008 | Judy Rabinovitz | Review and Edit 3d Cir. Merits Brief | 2.50 | $500.00 | $1,250.00 |
| 9/4/2008 | Judy Rabinovitz | Review and Edit 3d Cir. Merits Brief | 4.00 | $500.00 | $2,000.00 |
| 9/4/2008 | Judy Rabinovitz | Review Motion to Take Judicial Notice | 0.50 | $500.00 | $250.00 |
| 9/19/2008 | Judy Rabinovitz | Review and Edit Opp. to Motion to Remand | 1.00 | $500.00 | $500.00 |
| 9/26/2008 | Judy Rabinovitz | Review and Edit Motion to Reconsider | 0.50 | $500.00 | $250.00 |
| 10/2/2008 | Judy Rabinovitz | Review and Edit D. Ct Brief | 2.00 | $500.00 | $1,000.00 |
| 10/18/2008 | Judy Rabinovitz | Review Govt opp to Habeas Petition, Discuss with Co-Counsel | 2.00 | $500.00 | $1,000.00 |
| | | Amount Due | 20.50 | | $10,250.00 |

# EXHIBIT F

## DECLARATION OF AMRIT SINGH

I, Amrit Singh, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the following statements are true and correct to the best of my knowledge, information, and belief:

1. I am a Staff Attorney at the ACLU's Immigrants' Rights Project (IRP) and an attorney for the Petitioner in the above-captioned matter. I am a member of the Bar of the State of New York. I have been admitted to practice before numerous federal courts, including the United States Courts of Appeals for the Second and Third Circuits. I graduated from Yale Law School in 2001 and began working for the ACLU IRP in 2003.

2. Over the course of this litigation, I maintained contemporaneous time records of all work I performed on this case by noting such work daily in a MS Excel spreadsheet. The invoice attached hereto was compiled by reviewing these time records.

3. I possess specialized expertise in cases involving the rights of detained immigrants. I have advocated on behalf of non-citizens subject to prolonged and indefinite detention for four years. O served as attorney of record on *Joseph v. Avila*, No. 07-02392 (D.N.J. 2007), a habeas action challenging the three-year-long mandatory detention of a Trinidadian national and Gulf War veteran, and *Samadov v.*

*Hogan*, No. 07-00093 (M.D. Pa 2007), a habeas action challenging

counsel on litigation challenging the three-year-long post-final order

detention of an Uzbeki national.  I also served as amicus counsel in

*Clark v. Martinez*, 543 U.S. 371 (2005) (invalidating the indefinite,

post-final order detention of inadmissible non-citizens).

4. Based on conversations with my colleagues who have recently

researched the issue, I am also familiar with the billing practices and

rates of law firms in New York City.  The prevailing market rate for

an attorney of my experience and expertise is approximately $500.00.

However, out of an abundance of caution, I am requesting fees at the

prevailing market rate for comparable attorneys the Philadelphia area,

or $325.00.

_____          Feb. 13, 2009
Amrit Singh                            _____
                                       Date



**Immigrants' Rights Project**
**American Civil Liberties Union Foundation**
**125 Broad St., 18th Fl.**
**New York, NY 10004**

February 10, 2009

Damion Wilks
York County Prison
3400 Concord Rd.
York, PA 17402

Staff: [Amrit Singh]

| Date | Staff | Description | Hours | Rate | Total |
|------|-------|-------------|-------|------|-------|
| | | Previous Balance | | | $0.00 |
| 8/13/2008 | Amrit Singh | Draft 3d Cir Mot. to Expedite Appeal and Secure Release from Detention | 4.00 | $325.00 | $1,300.00 |
| 8/14/2008 | Amrit Singh | Draft 3d Cir Mot. to Expedite Appeal and Secure Release from Detention | 7.00 | $325.00 | $2,275.00 |
| 8/18/2008 | Amrit Singh | Finalize 3d Cir. Motion to Expedite Appeal and Secure Release | 1.00 | $325.00 | $325.00 |
| 8/21/2008 | Amrit Singh | Draft 3d Cir Merits Brief Appealing Habeas Denial by Dist Ct | 3.50 | $325.00 | $1,137.50 |
| 8/22/2008 | Amrit Singh | Draft 3d Cir Merits Brief Appealing Habeas Denial by Dist Ct | 4.00 | $325.00 | $1,300.00 |
| 8/27/2008 | Amrit Singh | Draft Reply Brief in Support of 3d Cir Mot to Expedite Appeal | 4.50 | $325.00 | $1,462.50 |
| 8/28/2008 | Amrit Singh | Finalize Reply Brief in Support of 3d Cir Motion to Expedite Appeal | 2.00 | $325.00 | $650.00 |
| 8/29/2008 | Amrit Singh | Refine Due Process Section of 3d Cir Merits Brief | 6.00 | $325.00 | $1,950.00 |
| 9/2/2008 | Amrit Singh | Draft Mot. to File Supp. Addendum and Take Judicial Notice | 3.00 | $325.00 | $975.00 |
| 9/2/2008 | Amrit Singh | Refine Due Process Section of 3d Cir Merits Brief | 5.50 | $325.00 | $1,787.50 |
| 9/3/2008 | Amrit Singh | Draft Mot. to File Supp. Addendum and Take Judicial Notice | 2.50 | $325.00 | $812.50 |
| 9/4/2008 | Amrit Singh | Draft Mot. to File Supp. Addendum and Take Judicial Notice | 3.00 | $325.00 | $975.00 |
| 9/5/2008 | Amrit Singh | Finalize 3d Cir. Opening Brief Appealing Dist. Ct's Denial of Habeas | 1.00 | $325.00 | $325.00 |
| 9/5/2008 | Amrit Singh | Finalize Mot. to File Proposed Supp. Addendum and Request Ct. Notice | 1.00 | $325.00 | $325.00 |
| 10/22/2008 | Amrit Singh | Review Draft Traverse to Govt Oppn to Petition for Habeas Corpus | 2.00 | $325.00 | $650.00 |
| 10/23/2008 | Amrit Singh | Review Draft Traverse to Govt Oppn to Petition for Habeas Corpus | 1.50 | $325.00 | $487.50 |
| | | Amount Due | 51.50 | | $16,737.50 |

# EXHIBIT G

## DECLARATION OF VALERIE BURCH

I, Valerie A. Burch, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the following statements are true and correct to the best of my knowledge, information and belief:

1.    I am a Staff Attorney for the ACLU of Pennsylvania and an attorney for the Petitioner in the above-captioned matter.  I am a member of the Bar of the Commonwealth of Pennsylvania.  I have been admitted to practice before the following federal courts: United States Court of Appeals for the Third Circuit, United States District Court for the Middle District of Pennsylvania and United States District Court for the Eastern District of Pennsylvania.  I graduated from Penn State University's Dickinson School of Law in 2004 and began working for the ACLU of PA in 2007.

2.    Over the course of this litigation, I maintained time records of work I performed on this case by noting such work through legal billing software on my computer.  The time records attached hereto were compiled by printing an invoice through this computer software.

3.    In determining the number of hours for which I seek compensation in this matter, I exercised billing judgment to ensure that the amount ultimately claimed was reasonable.  I did not log

background research and numerous fact-gathering phone calls with the client's family and immigration lawyer. I estimate that these unlogged hours amount to nearly half of the hours that I actually worked on the case. Although I believe that the fees I eliminated were compensable, I nevertheless chose not to seek compensation for that work, out of an abundance of caution to ensure that I was not billing excessively.

4.     I possess specialized expertise in the difficult statutory and constitutional issues raised by this case. For four years, I have advocated on behalf of non-citizens subject to prolonged detention—as an immigration lawyer and later as a civil litigator. During nearly three years of practice as an immigration lawyer, I exclusively represented detained non-citizens—an estimated thirty-five in all—necessitating over 100 immigration court appearances. I was lead counsel in *Lavira v. U.S. Att'y Gen.*, 478 F.3d. 158 (3d Cir. 2007) (addressing eligibility for withholding of removal and burden of proof under the Convention Against Torture) and *Valbrun v. Hogan*, 439 F.3d 136 (2d. Cir. 2006) (addressing constitutional due process claim and exhaustion of administrative remedies). I also served as counsel on *Dalegrand v. Donate et al.*,

No. 08-00951 (M.D. Pa. 2008), a habeas action challenging the two-and-a-half-year-long detention of a Haitian national with medical conditions, and am currently counsel on *Kyeame v. Buchheit*, No. 07-01239 (M.D. Pa 2007), a civil rights action on behalf of a Ghanian-born, Canadian citizen subjected to illegal arrest and detention following a traffic stop.

5.   Based on conversations with my colleagues who have recently researched the issue, I am also familiar with the billing practices and rates of law firms in Pennsylvania.  The $325.00 rate I have requested here is the prevailing market rate for an attorney of my experience and expertise.

_____
Valerie A. Burch

2-11-09
Date



**Immigrants' Rights Project**
**ACLU Foundation of Pennsylvania**
**Central Region Office**
**105 N. Front St., Ste. 225**
**Harrisburg, PA 17101**
**(717) 236-6827 x12**

February 11, 2009

Damion Wilks
York County Prison
3400 Concord Rd.
York, PA 17402

| Date | Staff | Description | Hours | Rate | Total |
|------|-------|-------------|-------|------|-------|
| | | **Previous Balance** | | | **$0.00** |
| 7/17/2008 | Valerie Burch | Client Interview | 0.58 | $325.00 | $189.58 |
| 7/25/2008 | Valerie Burch | Prep G-28 | 0.25 | $325.00 | $81.25 |
| 7/25/2008 | Valerie Burch | Research RE: Fee Waiver for Circuit Filing | 0.67 | $325.00 | $216.67 |
| 7/25/2008 | Valerie Burch | Strategy Call and Writeup | 0.75 | $325.00 | $243.75 |
| 7/31/2008 | Valerie Burch | Strategy Call and Writeup | 0.33 | $325.00 | $108.33 |
| 8/8/2008 | Valerie Burch | Client Interview | 0.67 | $325.00 | $216.67 |
| 8/13/2008 | Valerie Burch | Research RE: Detention Sanctions | 2.33 | $325.00 | $758.33 |
| 8/15/2008 | Valerie Burch | Edit Motion to Expedite | 0.42 | $325.00 | $135.42 |
| 8/15/2008 | Valerie Burch | Review File from Imm. Attny. | 3.17 | $325.00 | $1,029.17 |
| 8/18/2008 | Valerie Burch | Edit Motion to Expedite | 0.17 | $325.00 | $54.17 |
| 8/25/2008 | Valerie Burch | Draft and Locate Cites form Statement of Facts-3rd Cir. Brief | 3.33 | $325.00 | $1,083.33 |
| 8/26/2008 | Valerie Burch | Draft Appendix list - 3rd Cir. | 0.42 | $325.00 | $135.42 |
| 8/27/2008 | Valerie Burch | Research RE: Ability to Continue Underlying Removal Case from Abroad | 2.17 | $325.00 | $704.17 |
| 8/28/2008 | Valerie Burch | Edit Motion to Expedite Reply Brief | 1.08 | $325.00 | $352.08 |
| 8/28/2008 | Valerie Burch | Edit Statement of Facts - 3rd Cir. Brief | 0.25 | $325.00 | $81.25 |
| 9/2/2008 | Valerie Burch | Edit Brief | 0.33 | $325.00 | $108.33 |
| 9/3/2008 | Valerie Burch | Edit 3d Cir. Statement of Facts - Brief | 0.33 | $325.00 | $108.33 |
| 9/4/2008 | Valerie Burch | Draft Mot. to Take Judicial Notice - in part | 0.42 | $325.00 | $135.42 |
| 9/4/2008 | Valerie Burch | Edit 3d Cir. Statement of Facts - Brief | 0.33 | $325.00 | $108.33 |
| 10/20/2008 | Valerie Burch | Client Meeting | 1.75 | $325.00 | $568.75 |
| 10/20/2008 | Valerie Burch | Draft Client Affidavit | 1.33 | $325.00 | $433.33 |
| 10/23/2008 | Valerie Burch | Client Meeting | 0.67 | $325.00 | $216.67 |
| 10/23/2008 | Valerie Burch | Revise Client Affidavit | 0.50 | $325.00 | $162.50 |
| 11/13/2008 | Valerie Burch | Attend a Bond Hearing | 1.92 | $325.00 | $622.92 |
| | | **Amount Due** | **24.17** | | **$7,854.17** |

# EXHIBIT H

## DECLARATION OF MICHAEL TAN

I, Michael Tan, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the following statements are true and correct to the best of my knowledge, information, and belief:

1. I am the Arthur Liman Fellow of the ACLU Immigrants' Rights Project (IRP), where I focus on litigation and other advocacy on behalf of detained immigrants. I graduated from Yale Law School in 2008, and my application for admission to the Bar of the State of New York is still pending.

2. Over the course of this litigation, I maintained contemporaneous time records of all work I performed on this case by noting such work daily in a MS Excel spreadsheet. The invoice attached hereto was compiled by reviewing these time records.

3. In determining the number of hours for which I work seek compensation in this matter, I exercised billing judgment to ensure that the amount ultimately claimed was reasonable in several ways. First, I excluded a number of hours spent on legal research research. Second, I also excluded time spent preparing minor, procedural motions, such as requests for expedited briefing or for leave to file overlength briefs. Third, I only claimed a portion of the time I spent working on the instant attorneys' fee application. Fourth, lead counsel

on this case, Judy Rabinovitz, imposed a five percent reduction on my

hours spent on this case.  Although I believe the fees I eliminated

were compensable, I nevertheless chose not to seek compensation for

that work, out of an abundance of caution to ensure that I was not

billing excessively.


_____          Feb 13, 2009
Michael Tan                        Date



**Immigrants' Rights Project**
**American Civil Liberties Union Foundation**
**125 Broad St., 18th Fl.**
**New York, NY 10004**

February 10, 2009

Damion Wilks
York County Prison                                              Staff: [Michael Tan]
3400 Concord Rd.
York, PA 17402

| Date | Staff | Description | Hours | Rate | Total |
|------|-------|-------------|-------|------|-------|
| | | Previous Balance | | | $0.00 |
| 9/2/2008 | Michael Tan | Review and Draft Statutory Section of 3d Cir Opening Brief | 4.00 | $171.25 | $685.00 |
| 9/3/2008 | Michael Tan | Review and Draft Statutory Section of 3d Cir Opening Brief | 7.00 | $171.25 | $1,198.75 |
| 9/4/2008 | Michael Tan | Finalize Statutory Section of 3d Cir Opening Brief | 7.00 | $171.25 | $1,198.75 |
| 9/18/2008 | Michael Tan | Draft Opposition to Motion to Vacate DCT Decision and Remand | 4.00 | $171.25 | $685.00 |
| 9/25/2008 | Michael Tan | Draft Mot. to Reconsider 3d Cir. Order Vacating DCT Decision and Reman | 3.00 | $171.25 | $513.75 |
| 10/1/2008 | Michael Tan | Draft Memo in Support of Petition for Habeas Corpus | 4.00 | $171.25 | $685.00 |
| 10/2/2008 | Michael Tan | Draft and Finalize Memo in Support of Petition for Habeas Corpus | 4.00 | $171.25 | $685.00 |
| 10/22/2008 | Michael Tan | Draft Traverse to Govt Opp. to Petition for Habeas Corpus | 5.00 | $171.25 | $856.25 |
| 10/23/2008 | Michael Tan | Refine District Court Reply | 5.00 | $171.25 | $856.25 |
| 2/9/2009 | Michael Tan | Draft EAJA Fee Application | 3.00 | $171.25 | $513.75 |
| 2/10/2009 | Michael Tan | Draft and Finalize EAJA Fee Application | 2.50 | $171.25 | $428.12 |
| | | Amount Due | 48.50 | | $8,305.62 |

# EXHIBIT I

## DECLARATION OF JOSEPH C. HOHENSTEIN

I, Joseph C. Hohenstein, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the following statements are true and correct to the best of my knowledge, information, and belief:

1. I am a partner at Orlow, Kaplan & Hohenstein, LLP, a nationally-renown immigration law firm based in Philadelphia, PA. I have been a practicing immigration attorney for more than twelve years and specialize in complex litigation in the federal and immigration court system. I have filed more than 30 Mandamus and Declaratory Judgment actions in federal Court. He recently spoke as part of a panel on Mandamus issues at the national conference of the American Immigration Lawyers Association (AILA) about this increasingly complicated area of practice.

2. I am familiar with the experience and expertise of Judy Rabinovitz, Amrit Singh, and Valerie Burch. I have been aware of Ms. Rabinovitz's work for many years. She is one of the leading immigrants' rights lawyers in the country and one of the nation's leading experts on immigration detention. In fact, she provided mentoring and guidance to me on the very first habeas corpus complaint I filed more than 10 years ago, including reviewing, editing and critiquing my pleadings. She is a regular speaker and trainer of other attorneys at national conferences.

3. I have also been aware of Ms. Singh's and Ms. Burch's work in the immigrants' rights field for the past several years, during which time they have successfully litigated several cases involving the prolonged detention of immigrants. It is my opinion that all three of these attorneys possess the distinct and specialized knowledge that was required for the successful resolution of this case.

4. Mr. Wilks' case raised unique issues of statutory and constitutional immigration law in the detention context. Understanding the case's doctrinal background required knowledge of a complex body of caselaw concerning immigration detention, detailed treatment of the difficult statutory regime governing immigration detention, and intimate familiarity with due process jurisprudence on civil detention. Only an attorney with distinctive knowledge and exemplary skills in statutory and constitutional immigration law could have successfully litigated this case. It is my opinion that Ms. Rabinovitz, Ms. Singh, and Ms. Burch possess such knowledge and skills and that those skills were absolutely necessary to the successful resolution of this litigation.

5. The vast majority of the immigration bar in the United States does not engage in federal court litigation, and of those that do, only a very small number would be willing to take on a case of this complexity. Moreover,

there are almost no attorneys to my knowledge who would have undertaken such litigation at the EAJA statutory rate of $125 per hour, even adjusted for inflation.

6. I am also familiar with the billing practices and rates of law firms in Pennsylvania. The $325.00 rate requested for Ms. Burch in this case is the prevailing market rate for an attorney of her experience and expertise. If Ms. Singh and Ms. Rabinovitz practiced in the Philadelphia region their work would be billed at $325 and in excess of $500 respectively.

7. By way of example, more than five years ago, when I handled an immigration-related complaint in federal Court in the Eastern District of Pennsylvania, I was awarded $300 per hour in a departure from the standard EAJA rate. *Harriott v. Ashcroft*, 277 F. Supp. 2d 538, 545-46 (E.D.Pa. 2003). Ms. Burch is at a similar stage in her development as I was when I did the *Harriott* case. At this stage in her career she has already handled precedent-setting cases before the Third Circuit Court of Appeals and she is seen as an authority on issues relating to immigration detention.

_____                    2/11/09
Joseph C. Hohenstein                                Date
ORLOW, KAPLAN & HOHENSTEIN,LLP
PO Box 40017
620 Chestnut Street, Suite 656
Philadelphia, PA  19106